UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OSAMA A. ALKASABI et al., )
)
Plaintiffs, )
)
v. ) Civil Case No. 12-02021 (RJL)
)
WASHINGTON MUTUAL BANK, F.A. )
et al., )
)
Defendants. )

MEMORANDUM OPINION
March 24, 2014 [# 4]

Plaintiffs Osama A. Alkasabi and Nadia Haddada, proceeding *pro se*, brought this suit against defendants Washington Mutual Bank, F.A., Washington Mutual Bank (together, "WAMU"), and the Federal Deposit Insurance Corporation ("FDIC"), as receiver for WAMU, in connection with plaintiffs' purchase of two condominiums in La Jolla, California. *See generally* Compl. [Dkt. # 1]. Plaintiffs, borrowers from WAMU, a failed bank, allege that WAMU misrepresented that Certificates of Occupancy for the properties would be issued by the city before the loans closed. Before the Court is defendant FDIC's Motion to Dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. *See* FDIC-Receiver's Mot. to Dismiss and Mem. P. & A. in Supp. ("Def.'s Mot.") [Dkt. # 4]. Upon consideration of the pleadings, record, and relevant law, I find that this Court lacks subject matter jurisdiction, and therefore FDIC's

1

motion is GRANTED, and all claims against defendants WAMU and the FDIC are dismissed.[1]

## BACKGROUND

Plaintiffs' suit stems from their purchase of two condominiums at the Seahaus development in La Jolla, California. *See* Compl. ¶ 35. On June 1, 2005, plaintiffs borrowed $1,199,925 from WAMU to purchase one unit, *id.* ¶ 9 and Ex. D (Deed of Trust), and on July 24, 2006, plaintiff Alkasabi borrowed $1,216,224 from WAMU to purchase a second unit, *id.* ¶ 10 and Ex. E (Deed of Trust).

On December 14, 2012—more than eight years after the first condominium purchase and seven years after the second—plaintiffs filed their two-count complaint initiating this action, alleging that they did not receive "marketable title to their Seahaus Units because of the absence of a Certificate of Occupancy from the City of San Diego." Compl. ¶ 35. In the first count, entitled "Fraud and Deceit: Negligent Misrepresentation of Fact," plaintiffs allege that the issuance of Certificates of Occupancy was a condition precedent to closing the two loan transactions, *id.* ¶¶ 40, 52, but such certificates were not

---

[1] Plaintiffs also named JP Morgan Chase Bank, National Association ("Chase") as a defendant in their complaint in connection with Chase's September 25, 2008 purchase of WAMU's assets from the FDIC. *See* Compl. ¶¶ 1, 14. Plaintiffs allege that Chase is "liable for its own [p]ost-[p]urchase conduct by committing [p]ost-[p]urchase [n]egligent [m]isrepresentations and wrongful acts . . . from September 25, 2008, to present." *Id.* ¶ 15. On July 31, 2013, plaintiffs filed a Notice of Partial Voluntary Dismissal [Dkt. # 10] pursuant to Fed. R. Civ. P. 41(a)(1), dismissing with prejudice their claims against defendant Chase relating to the second condominium property (5460 La Jolla Blvd., Unit G301), pursuant to a Confidential Settlement Agreement and General Release applicable to that property. The docket in this case does not reflect that Chase was ever served, so to the extent any claims remain against Chase regarding the first condominium property (5470 La Jolla Blvd., Unit H301), plaintiffs shall within 30 days of the Order accompanying this Memorandum Opinion show cause in writing why the action should not be dismissed for failure to effect service pursuant to Fed. R. Civ. P. 4(m), or failure to prosecute pursuant to Local Civil Rule 83.23.

2

issued, *id.* ¶ 46. Further, plaintiffs allege that WAMU knew that no certificates had been issued at the time the loans were being negotiated, *id.* ¶¶ 37-38, made statements that such certificates had been issued while knowing, or being reckless in not knowing, that such statements were false, *id.* ¶¶ 41, 43-44, and thereby induced plaintiffs to enter into the loan contracts, *id.* ¶¶ 35, 59. Plaintiffs also assert that they did not discover that Certificates of Occupancy had not been issued until March 29, 2012 and May 18, 2012, when the Superior Court of San Diego County issued rulings in a related case. *Id.* ¶¶ 24, 48.² In the second count, plaintiffs seek a declaratory judgment that the FDIC (and Chase) assumed WAMU's alleged liability for the claim alleged in the first count. *See id.* ¶¶ 60-61.

Between the time when the loans closed and when plaintiffs initiated this action, WAMU collapsed. On September 25, 2008, the U.S. Department of the Treasury's Office of Thrift Supervision declared WAMU insolvent and appointed the FDIC as receiver pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified in various sections of

---

² On May 21, 2010, plaintiffs Alkasabi and Haddada, as well as other individuals, initiated an action in state court in California against the builders of the Seahaus condominiums and various lenders. *See* Compl. ¶¶ 27, 36; *see also* Register of Actions, *Sarnecky v. CBL Partners LTD*, Case No. 37-2010-00092634-CU-OR-CTL (Super. Ct., San Diego County), *available at* https://roa.sdcourt.ca.gov/roa/faces/CaseSearch.xhtml. That state court action appears to include claims that the builders "fraudulently constructed the Seahaus La Jolla project in a manner that violated the City of San Diego building code requirements," Compl. ¶ 36, as well as allegations—similar to those in the instant case—that lenders made negligent misrepresentations and "represented the issuance of a certificate of occupancy for the project was a condition precedent to funding certain loans used to purchase individual units," Compl. ¶ 28 (quoting San Diego Superior Court's March 29, 2012 Order in *Sarnecky v. CBL Partners LTD*). Chase is a defendant in that state court action, but the FDIC is not a party to it. *See* Def.'s Mot. at 3.

3

Title 12 of the U.S. Code). *See* Compl. ¶ 2; Decl. of William A. Starnes ("Starnes Decl.") [Dkt. # 4-1], at ¶ 3 and Ex. A (Order Appointing FDIC as Receiver); 12 U.S.C. § 1821(c). Pursuant to FIRREA's administrative claims process for handling creditors' claims against failed banks that are in receivership with the FDIC, discussed *infra*, the FDIC set December 30, 2008 as the deadline for filing claims against the WAMU receivership (hereinafter "Claims Bar Date"). *See* Compl. ¶ 22; Starnes Decl. ¶ 5. Also pursuant to FIRREA's statutory requirements, the FDIC published notice of its appointment as receiver (and of the Claims Bar Date) in newspapers of general circulation in October and December of 2008. Starnes Decl. ¶ 5 and Ex. B (Publication Notices).[3]

Nearly four years after the Claims Bar Date, on August 22, 2012, plaintiffs filed an administrative claim with the FDIC raising the misrepresentation claim that forms the basis of the instant suit. Compl. ¶ 21; Starnes Decl. ¶ 6 and Ex. C (Administrative Complaint). On October 16, 2012, the FDIC disallowed plaintiffs' claim as untimely filed. Compl. ¶ 22 and Ex. C (Notice of Disallowance); Starnes Decl. ¶ 7 and Ex. D (Notice of Disallowance). Thereafter, within the 60 day time limit allowed by statute to seek judicial review, plaintiffs filed their complaint in this case on December 14, 2012.

---

[3] The FDIC published notices in the *Wall Street Journal* (Oct. 1, 2008 and Oct. 31, 2008), the *Seattle Times* (Oct. 1, 2008, Oct. 30, 2008, and Dec. 1, 2008), and the *Las Vegas Review Journal* and/or the *Las Vegas Sun* (Oct. 1, 2008, Oct. 31, 2008, and Dec. 1, 2008). *See* Starnes Decl. ¶ 5, and Ex. B (Publication Notices).

## STANDARD OF REVIEW

Defendant FDIC has moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). In such a situation, a court should consider the Rule 12(b)(1) jurisdictional challenges before the Rule 12(b)(6) arguments. *See United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920-21 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)).

On a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) ("the party claiming subject matter jurisdiction . . . has the burden to demonstrate that it exists"). "[Plaintiffs'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc.*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citation and internal quotation marks omitted). In deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case."

*Bank of America, N.A. v. FDIC*, 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (citation and internal quotation marks omitted).[4]

## ANALYSIS

As a threshold issue, defendant FDIC argues that plaintiffs' complaint must be dismissed for want of subject matter jurisdiction: since plaintiffs did not timely file their administrative claim under FIRREA, they failed to exhaust the mandatory, jurisdictional administrative claims process, and therefore this Court lacks subject matter jurisdiction over these time-barred claims. Plaintiffs do not dispute that FIRREA provides this Court with jurisdiction over only claims that have first been filed administratively with the FDIC. Instead, they argue that they did, in fact, exhaust the administrative claims process because their claim meets FIRREA's late-filed claims exception, either on the ground that they did not receive adequate notice, or, in the alternative, because their claim did not accrue until after the Claims Bar Date had passed. *See* Pliantiffs [*sic*] Osama A. Alkasabi and Nadia Haddada's Oppositions and Objections to the FDIC-Receiver's Motion to Dismiss and Mem. P. & A. in Supp. ("Pls.' Opp'n") [Dkt. # 8], at 8, 10-11, 16. Next, plaintiffs contend that their administrative claim was not untimely because the Claims Bar Date should be equitably tolled. *See* Pls.' Opp'n at 12-13. For the reasons explained

---

[4] Accordingly, I will deny plaintiffs' request that defendant FDIC's motion to dismiss be converted into a motion for summary judgment on the ground that the FDIC attached an affidavit and supporting documents to its motion, *see* Pls.' Opp'n at 9-10, because those materials relate solely to FDIC's arguments for dismissal based on lack of subject matter jurisdiction under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(d); *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009) ("because Rule 12(d)'s conversion mechanism applies only to motions under Rule 12(b)(6) or 12(c), 'the impropriety of transforming Rule 12(b)(1) motions into summary-judgment motions is well-settled'" (citation omitted)); Def.'s Reply at 2-4.

below, plaintiffs' arguments are without merit. Accordingly, I find that this Court lacks subject matter jurisdiction, and I do not reach the FDIC's alternative arguments for dismissal.

## I. The FIRREA Claims Process is Jurisdictional

"'Federal courts are courts of limited jurisdiction;'" they have subject matter jurisdiction only to the extent that it is conferred by statute or the Constitution. *See Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Here, plaintiffs sue the FDIC pursuant to 12 U.S.C. § 1821(d)(6)(A)(ii), a provision of FIRREA, because the FDIC is acting as receiver for WAMU under that statute. *See* Compl. ¶ 30. FIRREA "extends a special kind of federal jurisdiction outside the scope of 28 U.S.C. § 1331, the normal source of federal question jurisdiction." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 222 (D.D.C. 2012).

FIRREA—which "Congress enacted . . . 'in the midst of the savings and loan insolvency crisis to enable the FDIC . . . to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country,'" *Westberg v. FDIC*, 741 F.3d 1301, 1303 (D.C. Cir. 2014) (quoting *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995))—creates an administrative claims process under which the FDIC decides creditors' claims against the assets of failed banks that are in receivership with the FDIC. *See* 12 U.S.C. § 1821(d)(3)-(13); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011); *Freeman*, 56 F.3d at 1399-1400. When liquidating a failed bank's assets, the FDIC must "promptly publish a notice to the depository institution's creditors to present their claims . . . [to the FDIC] by a date specified in the notice"—*i.e.* the Claims Bar

7

Date. 12 U.S.C. § 1821(d)(3)(B). At the same time, the FDIC must also mail a similar notice to (1) "any creditor shown on the institution's books," and (2) "claimant[s] not appearing on the institution's books" but whose names and addresses the FDIC later discovers. 12 U.S.C. § 1821(d)(3)(C). Once a claim is filed, the FDIC has 180 days to allow or disallow it. 12 U.S.C. § 1821(d)(5)(A). Claims that are filed late, after the Claims Bar Date, "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). There is one statutory exception to this rule, however: late-filed claims "may be considered by the receiver if . . . the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the Claims Bar Date]," and "such claim is filed in time to permit payment of such claim." 12 U.S.C. § 1821(d)(5)(C)(ii).

FIRREA provides for *de novo* judicial review of the FDIC's determinations of administrative claims. *See* 12 U.S.C. § 1821(d)(6); *Am. Nat'l Ins. Co.*, 642 F.3d at 1141; *Freeman*, 56 F.3d at 1400. Section 1821(d)(6) provides that the U.S. District Court for the District of Columbia (or the district court for the district where the failed bank has its principal place of business) shall have jurisdiction over claims that are disallowed by the FDIC, so long as the claimant files suit within 60 days of the disallowance. *See* 12 U.S.C. § 1821(d)(6)(A). But FIRREA also includes a "broadly worded limitation on judicial review," *Westberg*, 741 F.3d at 1303, in Section 1821(d)(13)(D):

> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of

8

> any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).[5]

As a result of the interplay of these provisions, our Circuit Court has interpreted FIRREA as making the administrative claims process jurisdictional. *See Westberg*, 741 F.3d at 1303 (filing a claim under the FDIC's administrative claims process "is a jurisdictional exhaustion requirement that we cannot excuse"); *Freeman*, 56 F.3d at 1400. In other words, the FDIC's administrative claims review process is mandatory, and therefore judicial review in this Court is unavailable unless plaintiffs first routed their claim through that process. *See Westberg*, 741 F.3d at 1308.

In this case, it is undisputed that plaintiffs filed an administrative claim with the FDIC. But it is also undisputed that they filed that claim late—nearly four years after the Claims Bar Date, to be exact—and the statute provides that late claims "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). The threshold—and as it turns out, dispositive—question for this Court, therefore, is whether plaintiffs' late filing should be considered timely under some exception to the Claims Bar Date such that plaintiffs can be considered to have met the exhaustion requirement. Unfortunately for plaintiffs, the answer is no, and therefore this Court lacks subject matter jurisdiction.

---

[5] "The '[e]xcept as otherwise provided' clause refers back to section 1821(d)(6)," the provision for judicial review. *Westberg*, 741 F.3d at 1303.

9

## II. The Late-Filed Claims Exception Does Not Apply

Defendant FDIC argues that plaintiffs have failed to show that they qualify for the late-filed claims exception, 12 U.S.C. § 1821(d)(5)(C)(ii). *See* Def.'s Mot. at 8-9. Plaintiffs counter that they meet this statutory exception because they allege they did not receive adequate notice: first, they "never received [a]ctual [n]otice or [n]otice of the Claim[s] Bar Date," including mailed notice under Section 1821(d)(3)(C), and second, they "never receive[d] [a]ctual [n]otice or [n]otice of the FDIC's appointment as a receiver in time to file such claim before [the Claims Bar Date]." Pls.' Opp'n at 10; *id.* at 15-16. Plaintiffs' arguments are unavailing.

First, plaintiffs' contention that they never received notice *of the Claims Bar Date* is irrelevant. As our Circuit Court has interpreted FIRREA, "[t]he *only* statutorily-specified exemption from the strict requirements of the administrative claims process is provided if 'the claimant did not receive *notice of the appointment of the receiver* in time to file . . . [a] claim.'" *Freeman*, 56 F.3d at 1402 (quoting 12 U.S.C. § 1821(d)(5)(C)) (emphasis added in *Freeman*). Accordingly, even if plaintiffs were entitled to receive notice *of the Claims Bar Date* under Section 1821(d)(3) but did not, that fact would be irrelevant for purposes of determining whether the statutory late-filed claims exception applies. *See Freeman*, 56 F.3d at 1402 (interpreting FIRREA to mean that the FDIC's failure to mail the notice required under 12 U.S.C. § 1821(d)(3)(C) does not relieve the claimant of the obligation to exhaust administrative remedies, because the statute does not provide for a waiver or exception under those circumstances); *Meliezer v. Resolution*

10

*Trust Co.*, 952 F.2d 879, 882-83 (5th Cir. 1992) (same); *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1285 (9th Cir. 1994) (same).

Second, and more importantly, plaintiffs have failed to show that they did not receive notice *of the appointment of the receiver*, and thus they fail to meet this sole statutory exemption. As an initial matter, nowhere in their administrative complaint, their complaint in this action, or their opposition brief do plaintiffs allege *when* they first learned of the FDIC's appointment as receiver for WAMU. Accordingly, they have failed to meet their burden to show lack of notice of the FDIC's appointment "*in time* to file [an administrative] claim *before* [the Claims Bar Date]," 12 U.S.C. § 1821(d)(5)(C)(ii) (emphasis added). *See* Def.'s Mot. at 8; Reply in Supp. of FDIC-Receiver's Mot. to Dismiss ("Def.'s Reply") [Dkt. # 9], at 5; *Khadr*, 529 F.3d at 1115 ("the party claiming subject matter jurisdiction . . . has the burden to demonstrate that it exists").[6]

In any event, plaintiffs cannot dispute that they did, in fact, receive adequate notice of the appointment of the FDIC as receiver through publication notice and inquiry notice. The FDIC published notice of its appointment in newspapers of general circulation in October and December of 2008, and such constructive publication notice is sufficient for parties, such as plaintiffs here, who were not known, identifiable creditors. *See Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1036 (4th Cir. 1994) (holding that publication in local newspapers precluded claimant's defense of lack of notice of

---

[6] In their opposition brief, plaintiffs allude to declarations they purportedly made that they did not receive "actual" or mailed notice of the FDIC's appointment as receiver, *see* Pls.' Opp'n at 14-15, but no such declarations are in the record.

11

receivership); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) (holding that statutory notice by newspaper publication was sufficient, as a matter of due process, as to trust beneficiaries whose interests or whereabouts could not with due diligence be ascertained).[7] Moreover, the collapse of WAMU—the largest bank failure in U.S. history—was widely publicized in 2008,[8] and therefore at the very least plaintiffs were on inquiry notice of the receivership and the administrative claims process. *See Elmco Props., Inc. v. Second Nat'l Fed. Sav. Assoc.*, 94 F.3d 914, 921-22 (4th Cir. 1996) (a claimant "may not complain of its lack of formal notice if it actually knew enough

---

[7] As discussed earlier, FIRREA requires the FDIC to mail a notice of the Claims Bar Date to (1) "any *creditor* shown on the institution's books," and (2) "*claimant[s]* not appearing on the institution's books" but whose names and addresses the FDIC later discovers. 12 U.S.C. § 1821(d)(3)(C) (emphasis added). Plaintiffs here were *debtors*, not creditors, on WAMU's books at the time the bank failed and went into receivership, and they only became *claimants* known to the FDIC when they asserted a claim against the assets of WAMU—*i.e.* when they filed their administrative claim with the FDIC on August 22, 2012. *See Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 386-87 (3d Cir. 1994) (observing that FIRREA does not define "claim" or "creditor," and applying the Bankruptcy Code's definitions of those terms to interpret FIRREA (citing *Office & Prof'l Emps. Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 68 (D.C. Cir. 1992))); 11 U.S.C. § 101(5) (defining "claim" as "right to payment" or "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment"); 11 U.S.C. § 101(10)(A) (defining "creditor" as an "entity that has a claim against the debtor"). Accordingly, plaintiffs were not known, identifiable creditors on WAMU's books requiring mailed notice under 12 U.S.C. § 1821(d)(3)(C) or as a matter of constitutional due process. *See also Elmco Props., Inc. v. Second Nat'l Fed. Sav. Assoc.*, 94 F.3d 914, 921 (4th Cir. 1996) (contrasting the case at bar, in which mailed notice was required because the receiver was aware of plaintiff's claim against the failed bank's assets soon after becoming receiver, with *Tillman v. Resolution Trust Corp.*, 37 F.3d 1032 (4th Cir. 1994), in which publication notice was deemed sufficient because the claimant was not one the receiver discovered before the Claims Bar Date where the claimant, whose claim was not based on a standard creditor-debtor arrangement, did not assert his claim against the failed bank until 30 months after that bank entered receivership); Def.'s Reply at 6-7.

[8] *See, e.g.*, Eric Dash & Andrew Ross Sorkin, *Government Seizes WaMu and Sells Some Assets*, N.Y. TIMES, Sept. 25, 2008, *available at* http://www.nytimes.com/2008/09/26/business/26wamu.html?pagewanted=all ("Washington Mutual . . . was seized by federal regulators on Thursday night, in what is by far the largest bank failure in American history.").

about the situation to place it on 'inquiry notice' as to the details of the administrative process," and "a claimant's knowledge that a bank has entered receivership triggers such inquiry notice"). Accordingly, plaintiffs do not satisfy the late-filed claims exception under Section 1821(d)(5)(C)(ii) because they have not shown they were unaware of the FDIC's appointment as receiver.

### III. The Discovery Rule Does Not Apply

Plaintiffs next argue that they meet the late-filed claims exception for a different reason—the application of the "discovery rule" for claims accrual. Under the discovery rule, a cause of action accrues (and the statute of limitations begins running) "'when the plaintiff has knowledge of (*or by the exercise of reasonable diligence should have knowledge of*) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'" *Goldman v. Bequai*, 19 F.3d 666, 671-72 (D.C. Cir. 1994) (quoting *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989)) (emphasis added); *see also Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012) (in cases where it is not "obvious" when "'the factual and legal prerequisites for filing suit are in place,'" the discovery rule applies, "which provides that the statute of limitations begins when the plaintiff 'discovers, *or with due diligence should have discovered*,' the injury supporting the legal claim" (citations omitted and emphasis added)).

Here, invoking the discovery rule and relying on a First Circuit case, *Heno v. FDIC*, 20 F.3d 1204 (1st Cir. 1994), plaintiffs argue that they did not discover their injury (*i.e.* their claim did not accrue) until *after* the Claims Bar Date, and as a result they were not able to meet that filing deadline. *See* Compl. ¶¶ 24-26; Pls.' Opp'n at 11; *Heno*, 20

13

F.3d at 1209 (deferring to FDIC's interpretation of the late-filed claims exception, 12 U.S.C. § 1821(d)(5)(C)(ii), as permitting late filing by not only claimants who did not receive notice of the appointment of the receiver in time to file a claim before the Claims Bar Date, but also claimants who could not file their claim in time because it did not come into existence until after that date). I find plaintiffs' argument unpersuasive.

Plaintiffs' alleged injury is the absence of Certificates of Occupancy for the two condominiums as of the closing dates of the two loan transactions in June 2005 and July 2006. But plaintiffs do not allege *any* facts, let alone sufficient ones, indicating that they exercised due diligence in ascertaining the alleged injury underlying their legal claim for misrepresentation. Instead, plaintiffs make only the conclusory assertion that they "exercised due diligence by filing [their administrative claim] with the FDIC." Compl. ¶ 26. But filing an administrative claim *after* purportedly discovering one's injuries, seven to eight years after those injuries occurred, has absolutely nothing to do with the exercise of diligence in ascertaining the injuries in the first place. *See* Compl. ¶¶ 24-29 (asserting that plaintiffs discovered the alleged misrepresentations on March 29, 2012 and May 18, 2012; plaintiffs filed their claim with the FDIC on August 22, 2012). As defendant FDIC points out, plaintiffs could have ascertained their injury with even minimal diligence at any point over that seven to eight year span: they could have requested the Certificates of Occupancy from the seller, their own real estate agent, or the City of San Diego. *See* Def.'s Mot. at 12-13. As a result, plaintiffs cannot invoke the discovery rule here.[9]

---

[9] For the same reasons, plaintiffs cannot invoke the discovery rule to avoid the District of Columbia's three-year statute of limitations for negligent misrepresentation claims, D.C. Code §

14

## IV. Equitable Tolling Does Not Apply

For much the same reasons, equitable tolling—which "permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim," *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998)—does not apply to salvage plaintiffs' claim here. *See id.* (observing that "the 'discovery rule' and 'equitable tolling' are often treated as the same doctrine").

As an initial matter, whether equitable tolling is potentially available depends on whether the Claims Bar Date *itself* (as opposed to exhaustion of the FIRREA administrative claims process overall) is jurisdictional. *Compare Holland v. Florida*, 560 U.S. 631, 645-46 (2010) (non-jurisdictional statutes of limitation may be equitably tolled), *with Dolan v. United States*, 560 U.S. 605, 610 (2010) (court may not extend a jurisdictional deadline for equitable reasons). Some federal courts of appeals have determined that the Claims Bar Date is jurisdictional.[10] Our Circuit Court, however, has indicated in dicta that this deadline should not be treated as jurisdictional and thus might be subject to equitable tolling in certain circumstances. *See Freeman*, 56 F.3d at 1403

---

12-301(8), which applies to plaintiffs' claims in this case under D.C.'s choice-of-law rules. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995); *Youkelsone*, 910 F. Supp. 2d at 222-23. Plaintiffs' alleged injury was readily ascertainable when the loans closed in June 2005 and July 2006, triggering the start of the three-year statute of limitations. Yet they did not file the instant complaint until December 2012, well outside that period. Accordingly, even if I did not find, as I do, that this Court lacks subject matter jurisdiction, plaintiffs' time-barred complaint would be subject to dismissal under Rule 12(b)(6).

[10] *See Althouse v. Resolution Trust Corp.*, 969 F.2d 1544, 1546 (3d Cir. 1992); *Paul v. FDIC*, 91 F.3d 110, 112-13 (11th Cir. 1996). *But see Carlyle Towers Condominium Assoc. v. FDIC*, 170 F.3d 301, 306-10 (2d Cir. 1999) (finding the Claims Bar Date is not jurisdictional and is instead "akin to a statute of limitations" that could be subject to equitable tolling).

15

n.2. But I need not decide this issue, however, because even assuming that the Claims Bar Date is not jurisdictional and thus could potentially be subject to equitable tolling, plaintiffs here have not alleged any facts sufficient to meet the due diligence requirement for equitable tolling. *See Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (noting that courts apply equitable tolling "'only in extraordinary and carefully circumscribed circumstances'" (citation omitted), and declining to decide whether equitable tolling applied to the Federal Tort Claims Act's statute of limitations because plaintiff had failed to meet the due diligence requirement for such relief).

## CONCLUSION

Thus, for the foregoing reasons, the Court GRANTS defendant FDIC's Motion to Dismiss. A separate Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge